| | | |
|---|---|---|
| Johnnie L. Johnson, #253526, | ) | |
| | ) | C/A No. 0:08-2071-GRA-PJG |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER AND** |
| | ) | **REPORT AND RECOMMENDATION** |
| Acting Warden Leroy Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This habeas corpus matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC on the respondent's motion for summary judgment (Docket Entry 24) and on the petitioner's motion to abandon unexhausted claims (Docket Entry 33). The petitioner, Johnnie L. Johnson ("Johnson"), a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised the petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (Docket Entry 26.) Johnson filed a motion to abandon the unexhausted claims in his habeas petition, (Docket Entry 33), and following an extension of time, he filed a response in opposition to the respondent's motion for summary judgment (Docket Entry 34). These motions are now ripe for resolution via an Order and Report and Recommendation.

## BACKGROUND

Johnson was indicted in Richland County for murder (97-GS-40-23737). (App. at 668, Docket Entry 23-18 at 43.) Johnson was represented by James Rogers, Esquire, and William Bryant, Esquire, and on October 12-16, 1998, was jointly tried with his co-defendant by a jury and found

guilty as charged.[1]  (Id.)  The circuit court sentenced Johnson to thirty-two years' imprisonment.

(App. at 672, Docket Entry 23-18 at 47.)

Counsel for Johnson timely filed a direct appeal.  On appeal, Johnson was represented by

Robert M. Dudek, Esquire, Assistant Appellate Defender for the South Carolina Office of Appellate

Defense.  On April 10, 2000, Johnson filed his final brief in which he raised the following issues:

> I.      Whether the judge erred by refusing to declare a mistrial where two witnesses
> testified appellant was shot at following the decedent's death, where the judge had
> already ruled this testimony was inadmissible since it had the tendency to confuse
> and be misinterpreted by the jury?
>
> II.     Whether the judge erred by allowing James Jones to testify the decedent told
> him co-defendant Leonard stole tire rims from him, and had assaulted him since this
> testimony was highly prejudicial hearsay also damaging appellant Johnson?

(Docket Entry 23-2 at 4.)  In a *per curiam* opinion, the South Carolina Supreme Court affirmed

Johnson's conviction and sentence.  (State v. Johnson, 2000-MO-147 (S.C. Dec. 5, 2000), Docket

Entry 23-4).  Johnson filed a petition for rehearing.  (Docket Entry 23-5.)  The Supreme Court

subsequently denied the petition, but ordered that a January 26, 2001 opinion be substituted for its

December 5, 2000 opinion.  (Docket Entry 23-6.)  The remittitur was issued on February 13, 2001.

(Docket Entry 23-7.)

Johnson then filed an application for post-conviction relief ("PCR").  (Johnson v. State of

South Carolina, 01-CP-40-2346, App. at 679, Docket Entry 23-18 at 55.)  Although Johnson did not

identify any specific issues in his application, his counsel, Tara D. Shurling, Esquire, presented the

following issues at the June 1, 2005 evidentiary hearing:

> 1.      Trial counsel was ineffective by failing to obtain records necessary to clarify and
> document when Defendant Tommy Leonard was discharged from the hospital;

---

[1]Tony Leonard ("Leonard") was Johnson's co-defendant. Leonard was indicted and tried on similar charges stemming from the same June 16, 1997 incident.  Leonard was sentenced to thirty-four years' imprisonment for murder.

2.  Trial counsel was ineffective in failing to object to the prosecutor's reference to the time the radiologist completed the x-rays as the time that Defendant Tommy Leonard left the hospital;

3.  Trial counsel was ineffective in failing to object to the prosecutor's closing argument that referred to Johnson seventeen times as "Crazy."

4.  Trial counsel was ineffective in failing to object to the prosecutor's closing argument where he stated that finding the defendants not guilty would allow them to return to "those thousands of guns and those thousands of rounds and those thousands of other victims."

5.  Trial counsel was ineffective in failing to object to the prosecutor's closing argument that made repeated references to "gang activity" where there was no evidence that Johnson was part of a gang and was designed to appeal to the passions and prejudice of the jury.

(App. at 693-96, Docket Entry 23-18 at 69-72.)  The PCR court denied Johnson's application by an order of dismissal dated September 22, 2005.  (App. at 759-67, Docket Entry 23-19 at 21-32.) Johnson made a motion to alter or amend judgment pursuant to Rule 59(e), (App. at 764-69, Docket Entry 23-19 at 26-31), which was subsequently denied by order dated December 21, 2005 (App. at 770, Docket Entry 23-19 at 32).

Johnson timely filed a Notice of Appeal.  On appeal, Johnson was represented by Robert M. Pachak, Esquire, of the South Carolina Commission on Indigent Defense, Division of Appellate Defense.  On June 8, 2006, Pachak filed a Petition for Writ of Certiorari in which he raised the following issues:

I.  Whether defense counsel was ineffective in failing to views [sic] a note on a co-defendant's medical records that showed a discharge time of 5:25 pm thereby changing the solicitor's time line of events and showing reasonable doubt of petitioner's guilt?

II.  Whether defense counsel was ineffective in failing to object to several improper and prejudicial portions of the solicitor's closing arguments?

(Docket Entry 23-8 at 3.) The South Carolina Supreme Court denied Johnson's petition for a writ of certiorari (Docket Entry 23-10), denied his subsequent petition for rehearing (Docket Entry 23-11), and issued a remittitur on September 6, 2007 (Docket Entry 23-12).

In Johnson's petition for a writ of habeas corpus, he raises numerous claims which are summarized as follows:

**Ground One:** Ineffective Assistance of Counsel(s)
- **(A)** Trial counsel violated Sixth Amendment of the United States Constitution by failing to reasonably investigate the case.
- **(B)** Trial counsel failed to make a contemporaneous objection to the prosecutor's closing arguments suggesting that Johnson was a member of a gang.
- **(C)** Trial counsel failed to move for a mistrial when the prosecutor injected gang-related issues into the trial.
- **(D)** Trial counsel missed opportunities to impeach and question Terry Wells's credibility and whether it was even physically possible for the events of the date of the incident to have taken place as alleged.
- **(E)** Trial counsel should have objected to prosecutor's closing argument in that it improperly appealed to the jurors' passions, prejudices, and personal biases.

**Ground Two:** Whether the trial court erred in refusing to grant applicant a directed verdict motion.
- **(A)** Trial court erred by allowing the prosecutor to improperly inject gang-related issues into the trial.
- **(B)** Trial court erred by not granting Johnson a new trial based on the unfairness created by gang-related references when there was no evidence the crime was gang-related or that Johnson was a member of a gang.
- **(C)** Trial court erred by not granting a directed verdict when insufficient direct or circumstantial evidence existed to prove Johnson's guilt.
- **(D)** The only evidence to support a common plan (critical to a "hand of one" case) were hearsay statements of Terry Wells.
- **(E)** The hearsay statements of Terry Wells did not provide any evidence that Johnson acted or planned in concert with other persons to commit the offense charged under the "hand of one" theory.
- **(F)** Trial court erred by not granting a directed verdict because prosecution failed to prove its "hand of one" theory of guilt and because the prosecutor's references to "Crazy" Johnson were highly inflammatory and should have been objected to.

(See Pet., Docket Entry 1-2 at 2-3.)

# DISCUSSION

## A.  Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e).  Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of

a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.      Habeas Corpus Standard of Review**

 **1.      Generally**

  In accordance with § 2254, claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1), (2).  When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. 362, 410 (2000); see also Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004).  Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

 **2.      Exhaustion Requirement**

  A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies.  28 U.S.C. § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may consider only those issues which have been properly presented to the highest state courts with jurisdiction to decide them.  Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or

barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth v. Ozmint, 377 F.3d 437 (4th Cir. 2004); see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

### C.    Johnson's Motion to Abandon Unexhausted Claims

On December 11, 2008, Johnson filed a motion to abandon his unexhausted claims in this matter. (Docket Entry 33.) Specifically, Johnson requests to abandon Ground Two and all of his arguments included under Ground Two. Johnson states that these issues were not raised in his direct appeal or in his PCR action. The respondent filed no response to this motion. Accordingly, this motion is granted and the claims Johnson alleges in his habeas petition under "Ground Two" are deemed withdrawn.

### D.    Respondent's Motion for Summary Judgment

As Ground Two has been withdrawn, the only issues before the court are Johnson's Ground One claims of ineffective assistance of counsel. A defendant has a constitutional right to the effective assistance of counsel. Williams v. Florida, 465 U.S. 1109, 1111 n.5 (1984). To demonstrate ineffective assistance of counsel, Johnson must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel were deficient in their representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of <u>Strickland</u>, Johnson must show that trial counsel's errors were so serious that their performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of <u>Strickland</u>, Johnson "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. Prejudice may be presumed when (1) a defendant is completely denied counsel at a critical stage of his trial, (2) counsel "entirely fails to subject the prosecution's case to a meaningful adversarial testing," or (3) "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." <u>United States v. Cronic</u>, 466 U.S. 648, 659 (1984).

1.      **Failure to Investigate**

Johnson first alleges that his trial counsel violated the Sixth Amendment to the United States Constitution by failing to reasonably investigate his case. (Pet., Docket Entry 1-2 at 2.) Specifically, Johnson argues that his trial counsel, James Rogers and William Bryant, failed to investigate notes contained on a medical record that he contends indicate "a discharge time 5:2? p.m. [for co-defendant Leonard] thereby changing the solicitors' time line of events and showing reasonable doubt of petitioner's guilt." (Resp. Opp. Sum. J., Docket Entry 34 at 3.)

Under the first prong of <u>Strickland</u>, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>Strickland</u>, 466 U.S. at 691. "[W]hen evaluating decisions not to investigate further, [the court] must regard counsel's choices with an eye for 'reasonableness in all the circumstances, applying a heavy measure

of deference to counsel's judgments.'" Bunch v. Thompson, 949 F.2d 1354, 1363 (4th Cir. 1991) (quoting Strickland, 466 U.S. at 691). "Once counsel conducts a reasonable investigation of law and facts in a particular case, his strategic decisions are 'virtually unchallengeable.'" Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009) (quoting Strickland, 466 U.S. at 690).

The notation that Johnson relies on is a handwritten note in the upper right hand corner of one of Leonard's medical records. The notes state either "D/C 5:25" or "D/C 5:21." (Supp. App. at 1, Docket Entry 23-20 at 3.) Johnson argues that his trial counsel should have investigated this notation and discovered that it indicated Leonard's discharge time. At the trial, the prosecutor referenced a discharge time of 4:56 p.m., a time contained in Leonard's radiology report under the heading "report released," as Leonard's discharge time from the hospital. (App. at 595, Docket Entry 23-17 at 98.) Johnson contends that the later discharge time narrows the time line of events, which includes traveling from the hospital to Leonard's girlfriend's apartment and then to the scene of the shooting.

During the PCR hearing, Johnson's PCR counsel, in arguing for the admission of a summary of Johnson's hospital records received in response to a subpoena served on the hospital, contended that this summary supports their assertion that the "D/C" stands for discharge time. (See App. at 697-706, Docket Entry 23-18 at 73-82.) The summary was ultimately not admitted by the PCR court. Thereafter, upon questioning of trial counsel Rogers by PCR counsel concerning the D/C notation, Rogers stated that the notations appear to say "D/C 5 something" and that he did not perceive that as the discharge time. (App. at 708, Docket Entry 23-18 at 84.) Rogers further testified that he did not follow up on this notation, but that he was later informed that it was the time the doctor dictated the document. (Id.) Trial counsel Bryant testified that he possibly thought that 5:21 p.m. may have been the discharge time, but that he did not believe that discharge time helped

Johnson's case. (App. at 733-34, Docket Entry 23-18 at 109-10.) Neither Rogers or Bryant could recall any reason that they did not object to the prosecutor's question during the trial that stated, "Ma'am, are you aware that [Leonard] was checked out of the hospital at 4:56?" (App. at 595, 711, 735, Docket Entry 23-17 at 98 and Docket Entry 23-18 at 87, 111.) However, Rogers testified that their theory of defense was that the witnesses were not credible. Bryant agreed with this statement. (Tr. 719, 732, Docket Entry 23-18 at 95, 108.) The PCR court determined that trial counsel "investigated the case, interviewed potential witnesses, and used an investigator" and that Johnson failed "to show a reasonable probability that the result at trial would have been different if trial counsel [had] done what [he] alleges [they] should or should not have done." (App. 762, Docket Entry 23-19 at 24.) Therefore, the PCR court, relying on <u>Strickland</u>, denied Johnson's PCR application on this ground.

As an initial matter, the court observes that no one actually testified at the PCR hearing that the "D/C" notation stood for "discharge." Further, even after the PCR hearing, it is unclear exactly what numbers follow the notation "D/C." In the filings and during the hearing it has been referred to as: 5 something, 5:25, 5:21, and 5:2?. The testimony at the PCR hearing included that of both trial counsel and an investigator. Trial counsel Bryant stated that it was possible that "D/C" stood for discharge time and that they should have looked further into that possibility. However, this is insufficient to satisfy the first prong of <u>Strickland</u>, as Johnson has not demonstrated that trial counsel's errors were so serious that their performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. There is no indication that trial counsel failed to investigate a material matter due to inattention, as both Rogers and Bryant testified at the PCR hearing that they reviewed the discovery material, including the medical record with the notation. <u>See</u> Powell, 562 F.3d at 570 (stating that "a failure to investigate

a material matter due to inattention may be deficient").  Moreover, Bryant stated that at that time he did not believe it would help Johnson's case, and Rogers testified that at that time he did not believe that the notation was a discharge time.  Accordingly, the court cannot say that counsel's decision was unreasonable.  Therefore, Johnson cannot satisfy the first prong of the Strickland test.

Even if Johnson satisfied the first prong of Strickland, he has not demonstrated that he was prejudiced as a result of his counsel's alleged failure to further investigate the actual discharge time of Leonard and, therefore, he cannot satisfied the second prong of Strickland.  As stated above, during the PCR hearing, Johnson presented the testimony of an investigator, Leonard Q. Bradley.  Bradley testified that he traveled the route from the hospital, to Johnson's girlfriend's apartment (where he waited approximately five minutes), and then to the crime scene.  (App. at 728, Docket Entry 23-18 at 104.)  Bradley testified that this trip took him twenty-eight minutes.  (Id.)  The 911 call occurred at 5:51 p.m., which is twenty-six minutes after a discharge time of 5:25 p.m. and thirty minutes after a 5:20 p.m. discharge time.  (See App. at 132, Docket Entry 23-14 at 7.)  This time line is simply too close to show a reasonable probability that the outcome would have been different and to undermine the confidence in the outcome of his trial.[2]  Strickland, 466 U.S. at 694.  Further, none of the presumptively prejudicial factors are present in this matter.  See Cronic, 466 U.S. at 659.  Moreover, Johnson has not shown that the PCR court's analysis of this issue, or the appellate court's decision to deny certiorari, misapplied clearly established federal law or, even if there was an error, that it was unreasonable.  See Williams v. Taylor, 529 U.S. at 410.  Therefore, Johnson is not entitled to federal habeas relief on this ground.

---

[2]Moreover, Bradley drove this route eight years after the crime occurred, on a different day of the week, and during a different month.

## 2.	Failure to Object or Move for a Mistrial

Johnson next argues that his trial counsel was ineffective for failing to object or move for a mistrial based on several statements by the prosecutor in his closing argument. Specifically, Johnson challenges three categories of statements made by the assistant prosecutor during closing argument: (1) numerous references to Johnson as "Crazy" or "Crazy Johnson";[3] (2) statements that Johnson contends suggest he was a member of a gang; and (3) statements that Johnson contends improperly appealed to the jurors' passions, prejudices, and personal biases. In considering this issue, the PCR court found the following:

> While there may have been some times when objections were not made when they could have been, counsel was unable to recall whether or not there may have been a valid reason to abstain from making an objection and [Johnson] has failed to show that there is even a reasonable probability that the outcome of the trial would have been different. [Johnson] did not carry his burden to show a reasonable probability that the result at trial would have been different had trial counsel done what [Johnson] alleges [they] should or should not have done.

(App. at 762, Docket Entry 23-19 at 24.)

Johnson argues that trial counsel should have objected to the prosecutor's repeated reference to Johnson by his nickname "Crazy" in closing argument and that trial counsel should have moved for a mistrial on this ground. (Pet., Docket Entry 1-2 at 3.) The evidence presented at the hearing reflects that "Crazy" was Johnson's nickname. (See App. at 283, 361, Docket Entry 23-15 at 42, 120.) During the trial, many of the witnesses responded to questions using Johnson's nickname "Crazy," (see App. at 293-94, 362, 364-65, 426-27, Docket Entry 23-15 at 52-53, 121 and Docket Entry 23-16 at 2-3, 64-65), co-defendant's counsel referred to Johnson as "Crazy" in some of her

---

[3]While this issue was actually contained in Ground Two of Johnson's habeas petition, Johnson has properly exhausted this issue and it does not appear that Johnson intended to withdraw this issue from the court's consideration. (See Respt.'s Mem. in Supp. of Summ. J., Docket Entry 23 at 13, 21-22; Petr.'s Mem. in Opp. to Summ. J., Docket Entry 34 at 9.)

questions, (see App. at 323-24, Docket Entry 23-15 at 82-83), and trial counsel Rogers referred to Johnson as "Crazy" in some of his questions, (see App. at 327-28, Docket Entry 23-15 at 86-87). During closing arguments, the prosecutor referred to Johnson by his nickname "Crazy" approximately seventeen times. (See generally App. at 632-49, Docket Entry 23-18 at 7-24.) During the PCR hearing, trial counsel testified that they probably should have objected to these statements and that they were prejudicial.

Additionally, during closing arguments, the prosecutor further referenced gangs, which Johnson contends suggested that he was a member of a street gang. Specifically, the prosecutor stated, "Ladies and Gentleman, if there was perfection, there would not be this gang of thugs out there committing these crimes." (App. at 636, Docket Entry 23-18 at 11.) In a series of rhetorical questions during his closing argument, the prosecutor asked, "Who had the motive? Who had the incentive? Who had the tools? Who had the means? Who had the gang? And who's [sic] the members of the gang?" (App. 646, Docket Entry 23-18 at 21.) During the PCR hearing, trial counsel Rogers stated that he should have objected to these statements. (App. 714, Docket Entry 23-18 at 90.) He further testified that if gang activity was not introduced at trial, then it should not have been mentioned during closing arguments. (App. 742, Docket Entry 23-19 at 4.)

Johnson also appears to argue that the prosecutor's closing argument improperly appealed to the personal biases of the jurors and "arouse[d] the juror[s'] passions and prejudices." (Pet., Docket Entry 1-2 at 2.) Johnson does not provide any further detail on this argument in his Petition or in his response to summary judgment. However, it appears, based on his petition for writ of certiorari filed with the South Carolina Supreme Court pertaining to his PCR case, that Johnson may be referring not only to the statements that included the word "gang," but also to the statements referring to guns and ammunition. Specifically, in closing argument, the prosecutor stated:

> They say there are thousands of guns, there are thousands of bullets, there's [sic] thousands of rounds. Four of them is [sic] in his girl friend's bedroom. And you know what, you find them not guilty, they're going to go back to those thousands of guns and those thousands of rounds and those thousands of other victims.

(App. 647, Docket Entry 23-18 at 22.) During the PCR hearing, trial counsel both stated they should have objected to this statement.

With regard to all of these statements, neither trial attorney was able to recall whether or not there may have been a valid reason to abstain from making an objection. Even assuming that each of these statements by the prosecutor was improper,[4] Johnson has not established that trial counsel's failure to object to them or move for a mistrial was objectively unreasonable; thus, he cannot meet the first prong of Strickland. Further, Johnson has not demonstrated that he was prejudiced as a result of his counsel's alleged deficiency and, therefore, he cannot satisfy the second prong of Strickland. An allegation or conclusory statement that these statements were prejudicial, without more, is insufficient to established prejudice under Strickland. See United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004) (stating that the petitioner's "conclusory allegations are insufficient to establish the requisite prejudice under Strickland"). Johnson has not presented any evidence to demonstrate a reasonable probability that the result of the proceeding would have been different if his counsel had objected to the allegedly improper statements in the prosecutor's closing argument. Strickland, 466 U.S. at 694. Further, none of the presumptively prejudicial factors are present in this matter. See Cronic, 466 U.S. at 659. Moreover, Johnson has not shown that the PCR court's analysis of this issue, or the appellate court's decision to deny certiorari, misapplied clearly

---

[4]Traditionally, the relevant question on habeas review is "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." Id. (internal quotation omitted).

established federal law or, even if there was an error, that it was unreasonable.  See <u>Williams v.</u> <u>Taylor,</u> 529 U.S. at 410.  Therefore, Johnson is not entitled to federal habeas relief on these grounds.

### 3. Other Grounds

As a subpart of Johnson's ineffective assistance of counsel claim, Johnson alleges that "[t]rial counsel missed [o]pportunities to impeach . . . and question . . . Terry Wells['s] credibility and whether it was even physically possible for the events of [the date of the incident] to have taken place as [alleged]."  (Pet., Docket Entry 1-2 at 2.)  This claim was not raised to or ruled upon by the PCR court and therefore would not have been preserved for state appellate review.  See <u>Marlar v.</u> <u>State,</u> 653 S.E.2d 266, 267 (S.C. 2007) (holding that issues must be raised to and ruled on by the PCR judge to be preserved for appellate review); Rule 59(e), SCRCP (providing avenue for any party to move to alter or amend a judgment).  Accordingly, Johnson has not properly exhausted this claim and the merits of this claim would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules.  See <u>Lawrence v. Branker,</u> 517 F.3d 700, 714 (4th Cir. 2008); <u>Longworth v. Ozmint,</u> 377 F.3d 437 (4th Cir. 2004).  Johnson has not demonstrated—or even alleged—sufficient cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will occur by failing to consider these claims.  See <u>Coleman,</u> 501 U.S. at 750. In fact, Johnson did not even address this claim in his response to the respondent's motion for summary judgment.  Accordingly, this claim is procedurally barred from federal habeas corpus review.

**ORDER**

For the foregoing reasons, it is hereby

**ORDERED** that petitioner's motion to abandon unexhausted claims (Docket Entry 33) is

GRANTED.

**RECOMMENDATION**

Further, for the reasons discussed above, the court recommends that the respondent's motion

for summary judgment (Docket Entry 24) be granted.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 14, 2009
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the district judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).